[No. 11463. Department One. January 6, 1914.]

AUDITORIUM THEATRE COMPANY et al., Respondents, v.
OREGON-WASHINGTON RAILROAD & NAVIGATION
COMPANY, Appellant.[1]

CARRIERS—OF GOODS—CONTRACT OF CARRIAGE—AGREEMENT AS TO TIME—EVIDENCE—QUESTION FOR JURY. In an action for damages for failure to move a scenery car on time, whether there was a promise to move scheduled trains on time, is a question for the jury, where the plaintiff's manager testified that he informed the defendant's agent of the necessity of moving the car on time for an evening performance, and rather than take chances on the scheduled train being late, preferred to hire a special train, and was informed that the connecting train was a local train, made up at P. and would not be late, whereupon he paid for moving the car by the scheduled train.

[1]Reported in 137 Pac. 489.

EVIDENCE—CONSTRUCTION OF CONTRACT—EXPERTS—CONCLUSION OF WITNESS. In an action for breach of contract of carriage of a baggage car of a theatrical company, whether the original contract of carriage of the advance agent was merged in a subsequent contract made by the traveling manager, is a conclusion to be drawn by the jury; and it is therefore error to allow a witness, assuming to speak as an expert as to the powers of theatrical agents, to give his conclusion that there would be such a merger.

APPEAL—REVIEW—HARMLESS ERROR. The admission of objectionable evidence that should have been stricken will not be held prejudicial, where the record fails to show any motion to strike.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered June 16, 1913, upon the verdict of a jury rendered in favor of the plaintiffs, in an action on contract. Reversed.

*A. C. Spencer* and *Hamblen & Gilbert,* for appellant.

*Cohn, Rosenhaupt & Grant,* for respondents.

CHADWICK, J.—Plaintiffs brought this action against the defendant to recover damages for a breach of a contract of carriage. Plaintiffs Maxon and DeMilt are engaged in the theatrical business, and in November, 1911, were putting on a road show, called "Checkers." The troupe carried its own scenery and the show could not be given without it. About November 1st, Maxon, who was advance agent for the show, made arrangements with the agent of the defendant at Spokane to transport the car of scenery which the show carried from Wallace, Idaho, to Spokane, Washington. It was understood that the car would be moved on the regular scheduled train, and would arrive in Spokane on the evening of the 12th. The show was put on at Wallace on the evening of the 11th. At that time, DeMilt, who was the traveling manager of the show, called on the local agent of defendant at Wallace. He says that he made inquiry about the movement of the trains, and discussed the possibility of

the train running late; that he impressed the fact upon the mind of the agent that, if the train were to run late, it might interrupt or prevent the evening performance and entail considerable loss; that, if it were at all likely, he would prefer to and was prepared to pay the extra expense of running a special train in from Tekoa; that, upon the agent's assurance that the connecting train was a local train, made up at Pendleton and could not be late, he paid the charge for moving the car by the regular scheduled train. He was given the following receipt:

"Wallace, Idaho, 11-11-11. Received from Manager, Checkers Company, $20 for movement baggage car Harrison, Idaho, to Spokane, Washington, trains seventeen and eight. November 12th, 1911.
$20.00            H. A. Bard, Agent O.-W R & N Co."

The agent of defendant at Wallace does not seriously contradict the testimony of the manager. The train arrived late, and the performance advertised for November 12th was abandoned. From a verdict and judgment in favor of plaintiffs, defendant has appealed.

Appellant insists that its contract was to move the car by its scheduled trains, and for any delay not attributable to its negligence—and none is shown in this case—it is not liable. This we understand to be the law; but we still think that it was within the power of the manager of the company to make a new contract for carriage by special train, if, upon further inquiry, it seemed doubtful or uncertain whether the regular train would arrive in season. He says he did not do so because of the assurance of the agent. This makes a question for the jury. We are not unmindful of the contention of counsel that an assurance on the part of the agent that the train would not be late was a mere guess upon a question which the manager could hazard an opinion as well as the local agent. This may be true, but it is nevertheless a circumstance to be considered by a jury and cannot, upon

this record, be accepted as controlling by the court. Whether a new contract was made at Wallace under circumstances which would warrant a jury in finding that there was a promise to move the scheduled trains on time, was for the jury, and the motion for a nonsuit and directed verdict were properly overruled.

When DeMilt was upon the witness stand, he was questioned and answered as follows:

"Q. An advance agent's work is generally 'known to be always subject to the revision or change' of the manager of the show? A. Yes. Q. That is a universal proposition, isn't it? A. Yes. Q. And whatever arrangements had been made prior to that with the defendant, if any had been made, it was merged into the contract that you made with the railroad company's agent at Wallace and here in Spokane? Your Honor, I objected to that on the ground that it was calling for a conclusion of the witness. The Court: I do not think so. The objection will be overruled. (Exception.) A. Yes."

This was error. Whether the contract which was made at Spokane by the advance agent was merged into the one made at Wallace, if one was made, was clearly a question to be resolved by the jury. The conclusion of the witness who assumed to speak as one having an expert knowledge of the ways of theatrical agents must necessarily have tended to deprive the defendant of the probative force of the first contract, which was admitted by plaintiffs.

DeMilt was asked, on cross-examination, if he had had a conversation with a Mr. Munson, an agent of the defendant, on the 13th of November. He answered that he had, and fixed the place. On redirect examination, he was asked and allowed to answer, over the objection of the defendant, that Mr. Munson voluntarily agreed with him that the company was to blame for the car not being on time, and that if the manager wanted to run a special it was up to the railroad company to bring the car in on a special. This was assigned

as error. Counsel say that a motion to strike the testimony was made. That it was prejudicial and should have been stricken, seems clear; but, as we read the record, no motion to strike the objectionable testimony was made. The testimony as given was improperly received, but the record is not sufficiently clear to warrant us in holding its admission to be error. It would have been proper to have asked DeMilt these questions upon direct examination, provided, of course, that a showing of the authority of the agent Munson to speak for the company, had been made. Otherwise, the testimony would be hearsay. Counsel say in their brief that an amendment was stipulated to the effect that Munson was the general agent of the railroad company at Spokane. It is not in the pleadings as certified to this court, nor do we find anything in the statement of facts with reference to it. Assuming that the pleadings were so amended, there is no evidence to sustain the allegation.

For the error found, the case will be reversed and remanded for a new trial. Reversed.

CROW, C. J., ELLIS, MAIN, and GOSE, JJ., concur.